FISHER & FELLOWS, Plaintiffs in Error, *vs.* CUTTER, Defendant in Error.

1. D. sold to B. some lard and agreed in writing as follows : " I am to ship the above lard to Messrs. F. & F., New York, for sale, and to value on them *at ninety days from date of delivery of said lard, for full cost of same in favor of said* B. ; and *above lard to be sold to meet payment of the aforesaid drafts."* On the same day, C. executed to D. the following writing : " Mr. D. having this day sold to Mr. B. 417 tierces of lard, *upon terms agreed upon by them,* and the said D. having advanced drafts to full amount of cost of said lard, I hereby promise and agree to pay to the said D., or his order, on demand, any amount of reclamation he may have against said B., arising from sales of said lard." The lard was by D. shipped to F. & F., but by an arrangement between them and B., without the knowledge of D., was not sold to meet the drafts, which were by F. & F. otherwise provided for. Afterwards, the lard was sold for less than the amount of the drafts. D. assigned C.'s agreement to F. & F., who bring suit upon it for the reclamation. *Held,* C.'s writing was a guaranty, and to be construed in reference to the contract between D. & B. ; and the guarantor was discharged by the failure to sell the lard within ninety days.

(GAMBLE, J., dissenting, holding that C.'s writing was an original undertaking, and could only be discharged by some act of· D.)

### Error to St. Louis Court of Common Pleas.

The case is sufficiently stated in the opinion of the court.

Mr. *Kasson,* for plaintiff in error, insisted upon the following points : 1. This is not, in legal language, a guaranty. It is an independent, original undertaking of Cutter. (3 Kent's Comm. 121. Smith's Mercantile Law.) 2. The contract is to be taken most strongly against the maker. (Chitty on Cont. 95, 96.) 3. But if this is to be considered a guaranty, then it is as broad as the liability of the principal, and only his discharge, or a violation of the ordinary course of trade, could discharge the defendant. (*Lawrence* v. *McCalmont,* 2 Howard (U. S.) 449. 12 East, 227.)

Mr. *Lord,* for defendant in error, made the following points : 1. The guaranty and contract are to be taken together, and as the contract contemplated a sale to meet payments at maturity, the subsequent arrangement between Butler and Fisher & Fellows

changed the contract and discharged the surety. (Holcombe & Gholson's Smith's Mercantile Law, p. 465, note a. Parsons on Contracts, 502, 503 et seq. Burge on Suretyship, 214, 215, 216. Chitty on Contracts, (Am. ed.) p. 529 et seq.) 2. Cutter's agreement was, to pay any reclamations after sale of the property, but the time of sale was extended without his knowledge or consent, and this discharges him. (Robbins v. Bingham, 4 Johns. 476. Walsh v. Baile, 10 Johns. 180. See note in 3 Wheaton, p. 148, and cases there cited. Comegys v. Booth & Bell, 3 Stewart, 14. Hunt v. Smith, 17 Wend. 179. Hare & Wallace's Am. Lead. Cases, p. 149, and cases there cited.) 3. Cutter's guaranty was not intended to protect any one but Dana, whose drafts were paid by Fisher & Fellows, pursuant to the arrangement between them and Butler. (Miller v. Stewart, 9 Wheat. 680. 2 Penn. (Pen. & Watts,) 27. 6 Gill & J. 247. 8 Wendell, 512. 6 Hill, 540.) 4. The contract is, in its nature, special, and not negotiable. (Chitty (7th Am. ed.) 499, note 2, and cases there cited. 2 Denio, 375. 10 Johns. 179. Penoyer v. Watson, 16 Johns. 7 Blackf. 526.)

RYLAND, Judge, delivered the opinion of the court.

The question in this case depends on the proper construction of the instrument of writing signed by Cutter. On the 15th February, 1851, Charles Dana signs an instrument in writing, as follows : " I have this day sold Mr. S. O. Butler 417 tierces lard, rendered by Samuels & Moss, and delivered at Hannibal, Mo., upon the following terms, to-wit : at seven and one half cents per pound, the weight rendered me by Samuels & M., to be considered the true one, and tare, as marked on each package, to be considered the actual tare, delivery to be made on day of shipment from Hannibal. I am to ship the above lard to Messrs. Fisher & Fellows, New York, for sale, and to value on them at ninety days, from date of delivery of said lard, full costs of same in favor of said Butler,

Fisher *v.* Cutter.

(for which, as also. for shipping, I am to receive no commissions,) and above lard to be sold to meet payment of the aforesaid drafts ; said drafts shall be negotiated by myself or Butler ; Mr. Norman Cutter is to give his obligation to pay to me any reclamations that may accrue upon sales of above lard, on demand, and any profits that may be realized shall be paid over to Mr. Butler.''

" St. Louis, Mo. Above terms accepted by S. O. Butler. February 15, 1851.''

The following is the instrument of writing signed by Cutter :

" Mr. Charles Dana having this day sold to Mr. S. O. Butler four hundred and seventeen tierces lard upon terms agreed upon by them, and the said Dana having advanced drafts to full amount of costs of said lard, I hereby promise and agree to pay to the said Dana, or his order, on demand, any amount of reclamation he may have against said Butler, arising from sales of said lard.                                                  " NORMAN CUTTER.

" St. Louis, February 15, 1851.''

The lard was shipped by Dana to Fisher & Fellows, and drafts drawn on them at ninety days in favor of Butler. By arrangements between Fisher & Fellows and Butler, the lard was not sold to meet the drafts at ninety days, but was held over and the drafts met. Fisher & Fellows agreed, for $2\frac{1}{2}$ per cent. commission, to hold the lard for ninety days after the drafts came to maturity. The lard was finally sold, but not for a sufficient sum to meet the drafts, charges, commissions, &c. Dana assigned to Fisher & Fellows the guaranty of Cutter, and they bring this suit. It is agreed that neither Dana nor Cutter had any knowledge of the arrangement made by Fisher & Fellows and Butler to hold over the lard, and meet the drafts some other way. The court below found for the defendant, Cutter. The case comes here by writ of error.

1. We think the judgment below correct. In the view we take of this matter, we consider that the undertaking of Cutter must be construed in reference to the contract made by Butler and Dana. Cutter says, Dana having sold to Butler 417 tierces of

lard "upon terms agreed upon by them," and having advanced drafts to the full amount of costs of said lard, &c. Now what were the terms which Cutter had in his mind? The lard was sold at $7\frac{1}{2}$ cents per pound, to be shipped to Fisher & Fellows; drafts at ninety days were drawn on them for the cost of said lard, and the lard was to be sold to meet these drafts. Cutter might well suppose that there would be no loss upon this shipment, if sold, and drafts met at ninety days. Therefore, upon the terms agreed upon by them, Cutter was willing to guaranty and pay for whatever reclamation Dana should have against Butler by reason of these drafts.

I do not consider Cutter's an original undertaking, but a guaranty, and a guaranty for ninety days' drafts only. No matter, then, whether Dana knew or not the arrangement between Fisher & Fellows and Butler, by which the drafts were prolonged, and the sales of the lard postponed; he was only to guarantee according to the terms of the contract between Dana and Butler.

I admit that contracts of guaranty, like all commercial contracts, have received a liberal interpretation in furtherance of the intention of the parties; but then they should never be extended beyond the obvious import of the terms in their reasonable interpretation. Justice Story said, in the case of *Miller* v. *Stewart*, 9 Wheat. 702: "Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication, beyond the terms of his contract. To the extent and in the manner and under the circumstances pointed out in his obligation, he is bound and no further. Courts of equity, as well as courts of law, have been in the constant habit of scanning the contracts of sureties with considerable strictness." In *Lawrence* v. *McCalmont et al.*, 2 How. Rep. 449, the same judge says: "The words of such guaranty contracts should receive a fair and reasonable interpretation, and should not be forced out of their natural meaning."

Applying these rules to the case before us, and we cannot

hesitate to say, that Cutter's guaranty here has a direct relation to the contract between Dana and Butler, as it was then made—the lard to be shipped, and drafts drawn on it at ninety days, and not for 180 days. It was a guaranty against loss upon the contract as then made, and not upon any future contract which Butler might make with Fisher & Fellows. Fisher & Fellows got their pay for this change of the terms. They pay the drafts, and wait ninety days longer. Now Cutter was to guaranty against loss on the sale, that is, loss on the sale at ninety days' credit, as then made, which is equivalent to guaranteeing against loss on the drafts which Dana had drawn at ninety days on Fisher & Fellows. Surely his contract cannot be extended to a guaranty against any loss which Fisher & Fellows and Butler might cause by their after arrangements, in holding over the lard and extending the time of the drafts, by renewing them for ninety days.

We do not consider this agreement of Cutter's as an original agreement, standing alone, and to be construed without reference to the arrangement then made concerning the lard between Butler and Dana. We consider it simply a guaranty that he will pay whatever reclamation Dana may legal y have against Butler, by reason of the drafts then drawn in his favor at ninety days, and it would be unjust to extend this guaranty to any other contract.

The judgment of the court below is therefore affirmed; Judge Scott concurring. Judge Gamble dissents. He considers the contract an original undertaking, and not merely a guaranty, and that it could only be discharged or released by act of Dana.